## 44190. LANSFORD et al. v. GATLIFF.

DEEN, Judge. 1. The contention of the appellee that it is necessary for appellant, if he desires the sufficiency of evidence to be considered, to move for either a directed verdict, a new trial, or judgment notwithstanding the verdict is without merit. "The entry of judgment on a verdict by the trial court constitutes an adjudication by the trial court as to the sufficiency of the evidence to sustain the verdict, affording a basis for review on appeal without further ruling by the trial court." *Code Ann.* § 6-702 (Ga. L. 1966, p. 495).

2. The purpose of processioning proceedings is not to adjudicate title, and not to mark lines which have never been ascertained, but to lay out and mark anew lines previously established, respecting all claims of adjoining landowners of possession under a claim of right for more than seven years, or adverse possession which has ripened into title, or previous acquiescence or agreement between them. *McAlpin v. Thompson,* 29 Ga. App. 495 (116 SE 64); *Crawford v. Wheel-*

*er,* 111 Ga. 870 (36 SE 954); *Langley v. Woodruff,* 144 Ga. 702 (87 SE 1054); *Cosby v. Reed,* 21 Ga. App. 604 (94 SE 824). Where corners are established but the line not marked, a straight line as required by a plat may be run, and projections over the earth's surface may be made. *Hayes v. Wilson,* 60 Ga. App. 731, 733 (5 SE2d 97). Where the boundary line of the properties is also the landlot line there appears some confusion as to whether it may be *established,* as opposed to *relocated* by the processioners. In *Allen v. Rome Kraft Co.,* 114 Ga. App. 717, 720 (152 SE2d 618) it was stated: "It is indicated in appellee's brief that the processioners ran the original lot lines. Even if this be true, such a line, even if marked on the face of the earth, could not be a line intended to be set up under the law unless the deeds of the parties described the line between the parties as *other than the original landlot lines.* Here the deeds of both parties show as boundaries the original lot lines. It is not the function of processioners to bring into existence any line which had not been before designated on the surface of the earth, or to establish lines merely drawn on paper." However, in *Burdette v. Coleman,* 31 Ga. App. 553 (121 SE 143) it was held that a boundary line run along the original landlot line was not per se void, but that the return of the processioners should be set aside only as to the portion where adverse possession was urged under a claim of right. And where the only issue is whether the line run is the "true original line," and the finding is sustained by some evidence, it will not be reversed. *Whitehurst v. Hathorn,* 128 Ga. 406 (57 SE 682).

3. In the present case there was no motion to dismiss the proceedings on the ground that the return of the processioners resulted only in the establishment of a new line never before marked on the earth's surface, and whether such a motion, if made, would have been good we do not adjudicate. The effect of the return of the processioners here and in the verdict upholding it in the superior court is to establish the landlot line as called for by the deeds of the respective parties as the boundary line, and this line runs mainly through a wooded area and partly through a clearing and has not been physically marked, nor are any rights resulting from possession, acquiescence or agreement involved in the case. The appellants, however, contended for a boundary line parallel to and 80 feet east of the landlot line based on certain

statements against interest of a prior owner, an iron axle on the east-west line marking the north boundary of the landlot, a nail and crown on the south side of a road running northeast and southwest through the properties, and a concrete marker on the southern boundary of the appellee's property, which three points line up to a north-south landlot line called for in the deeds and found to be the true line by the processioners. The determination of whether this was a recognized boundary line was a proper subject matter for the processioners to decide. They decided against it, and the only question here is whether this adjudication is supported by any evidence.

4. One of the appellants' witnesses, a surveyor, testified that the landlot line (wherever it was) was the boundary. He ran the east line in 1938, beginning from a "steel rod set in concrete" on the north, but there is no evidence that this was the same marker as the "iron axle" or "iron stob" now existing on the north line. Another surveyor witness for the appellants testified that he had placed the "nail and crown" in the roadway when he made a survey in 1965, and that it was merely a traverse point. As to the third marker, on the south boundary of appellee's land, Lamar, predecessor in title of the appellee, testified that he placed the marker there and did not intend it to be a marker between his property and that now owned by appellants, but only as a marker between his property and that adjoining him on the south because it marked the end of a firebreak which he had ploughed from north to south along the west side of his land, and the north end of which went to a driveway of a tenant house on the road crossing his land. He further testified that this house and the well and pump adjoining it were built by him and both were on his land. If the line contended for by appellant prevailed it would have passed between the house and the pump. There is accordingly some evidence against each of the markers contended for by the appellants as establishing a north-south boundary lying 80 feet east of the landlot line, and a verdict against them must be

*Affirmed. Bell, P. J., and Eberhardt, J., concur.*

ARGUED JANUARY 9, 1969—DECIDED FEBRUARY 4, 1969.

Culpepper & Culpepper, Sampson M. Culpepper, for appellants.
Wells & Adams, Charles R. Adams, Jr., for appellee.